IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                        :
PETER J. BUCK, JR.                      :           3:15 CV 123 (JBA)
                                        :
v.                                      :
                                        :
INDIAN MOUNTAIN SCHOOL, INC.            :           DATE: JULY 20, 2016
                                        :
-------------------------------------------------------x
```

RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND ON NON-PARTIES'
MOTION TO QUASH SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER

On January 29, 2015, plaintiff, who had been a student at defendant Indian Mountain

School, Inc. ["IMS"] from 1982 through 1984, when he was fourteen and fifteen years old,

filed this lawsuit, alleging horrific and repeated sexual abuse by various school employees,

including by English teacher Christopher Simonds, about which Headmaster Peter Carleton,

Assistant Headmaster Steven Carter, and multiple other faculty members and staff, and

members of the Board of Trustees, knew or should have known; allegations of sexual abuse

and/or misconduct are also alleged against teacher Windsor Copeland, Headmaster Carleton,

Carleton's wife, Kitty Carleton, and an employee Jim Hickey.  (Dkt. #1).  The Complaint

raises five counts: negligence (First Claim), recklessness (Second Claim), negligent infliction

of emotional distress (Third Claim), intentional infliction of emotional distress (Fourth Claim),

and breach of fiduciary duty (Fifth Claim). (Id.).  On February 23, 2015, defendant filed its

Answer and Affirmative Defenses. (Dkt. #11).   Under the latest scheduling order, all

discovery (including expert discovery) is to be completed by August 1, 2016.  (Dkts. ##43-

44; see also Dkts. ##17, 34, 47).

On June 14, 2016, defendant filed the pending Motion for Protective Order, with

respect to a subpoena served upon Attorney Perley Grimes.  (Dkt. #46).[1] Two weeks later, on June 28, 2016, Attorney Grimes and his law firm, Cramer & Anderson LLP, filed their own Motion to Quash Subpoena Duces Tecum and for Protective Order, with regard to this same subpoena.  (Dkt. #49).[2]  On July 5, 2016, plaintiff filed his brief and affidavit of counsel in opposition to both motions.  (Dkts. ##51-52).[3]  Six days later, defendant filed its reply brief. (Dkt. #54).

On June 29, 2016, U.S. District Judge Janet Bond Arterton referred both of these motions to this Magistrate Judge. (Dkt. #50).  For the reasons stated below, defendant's Motion for Protective Order (Dkt. #46) and the non-parties' Motion to Quash and for Protective Order (Dkt. #49) are granted in large part.

## I.  DISCUSSION

As set forth in both pending motions, Attorney Grimes represented former IMS students who had brought lawsuits against the school during the 1990s; the subpoena at

---

[1]Attached as Exh. A is a copy of the Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action, served upon Attorney Grimes, dated June 8, 2016; a copy of a letter from plaintiff's counsel to Attorney Grimes, also dated June 8, 2016 is attached as Exh. B.

[2]Attached as Exh. A are copies of the June 8, 2016 letter and subpoena.

[3]The following eleven exhibits are attached to counsel's affidavit (Dkt. #52): copy of redacted Settlement, Confidentiality and General Release Agreement in Doe v. The Indian Mountain School, Inc., Dkt. No. UWY-CV14-6025377-S, filed in the Connecticut Superior Court in Waterbury, dated February 17, 2015 (Exh. A); redacted excerpts of transcript from court proceeding in Brownville v. Indian Mountain School, Inc., 14 CV 1472 (JBA), on November 12, 2015 (Exh. B); redacted cover sheet of deposition transcript in Doe 55 v. Indian Mountain School, Inc. (Exh. C); copies of correspondence between counsel, dated January 19, June 9, and June 10, 2016 (Exhs. D, J-K); copies of emails between counsel, dated March 5 and October 1-2, 2015  (Exhs. E, G); copy of Defendant's Revised and Supplemental Compliance with Plaintiff's First Request for Production of Documents, dated September 30, 2015, in the Brownville case (Exh. F); copy of redacted letter from defense counsel, dated February 19, 2016, with redacted Subpoena to Testify at a Deposition in a Civil Action, also dated February 19, 2016 attached (Exh. H); and redacted excerpts of a deposition transcript, taken on May 25, 2016 (Exh. I).

issue had sought production of

> [e]very document in [Attorney Grimes'] possession, custody or control concerning or relating to sexual abuse perpetuated at Indian Mountain School, specifically including documents created and produced in the course of lawsuits brought by victims of sexual abuse against the school and other parties, such as deposition transcripts, exhibits, and other documents produced in discovery by the defendants.

(Dkt. #46, at 1-2 & Exh. A; Dkt. #49, at 1 & Exh. A).   In his letter to Attorney Grimes, plaintiff's counsel specifically exempted production of documents protected by the attorney-client privilege or the work product doctrine, but further added that to the extent that any of his clients had signed confidentiality agreements precluding the disclosure of discovery materials, then "the attached subpoena is a lawful order overriding any such [a]greement, subjecting the recipient to contempt for failure to comply pursuant to Fed. R. Civ. P. 45(g)." (Dkt. #46, at 2 & Exh. B; Dkt. #49, Exh. A).

According to defendant, plaintiff's subpoena "seeks to invalidate" an order entered by U.S. Magistrate Judge William I. Garfinkel, upon agreement of counsel, on November 12, 2015, in the related case of Brownville v. Indian Mountain School, Inc., 14 CV 1472 (JBA); both plaintiffs are represented by the same law firm.  (Dkt. #46, at 2-3, 4-5; see also Dkt. #52, Exh. B; see also Brownville, Dkts. ##48-49, 99, 105).  Defendant further represents that it produced nineteen redacted deposition transcripts in accordance with the order and agreement reached before Judge Garfinkel.  (Dkt. #46, at 3; see also Dkt. #49, at 4).   In their brief, the non-parties argue that they are barred by Rule 1.6 of the Rules of Professional Responsibility from disclosing any confidential client information, particularly when the lawsuits filed in the 1990s "have long been concluded."  (Dkt. #49, at 1-4).

Plaintiff's arguments in opposition are four-fold.   First, plaintiff argues that defendant's insistence upon confidentiality as a condition of settling all other plaintiffs' sexual abuse cases against it is an attempt "to hide relevant and admissible evidence from the plaintiffs, the Court and the jury," all in violation of Rules 3.4(6) and 3.4(1) of the Rules of Professional Conduct. (Dkt. #51, at 1-3; Dkt. #52, Exh. A).   Second, plaintiff argues that defense counsel, who "has represented [defendant] IMS in every child sexual abuse case brought against the school, from the early 1990's to the present time[,]" has lost or destroyed deposition transcripts, deposition exhibits, and other relevant documents.  (Dkt. #51, at 3-5).   Specifically, plaintiff represents that at least fifty-five children have been identified by defendant with "Doe" pseudonyms, of whom plaintiff believes that approximately twelve have come forward, have been deposed and have settled their claims, but only six victim depositions have been produced in this case; of these six, some are incomplete – Vol. II of Doe 1's transcript and Doe 3's transcript were not produced, and plaintiff is unable to ascertain how many additional transcripts may exist.  (Dkt. #51, at 3; Dkt. #52, Exhs. C-D).   Plaintiff further identifies two other deposition transcripts that are missing – those of Headmaster Richard Rouse and Teacher Michelle Nemiroff.  (Dkt. #51, at 4).  Defense counsel has acknowledged his "files from the 1990s are far from perfect.  Not all of the transcripts are complete."  (Dkt. #51, at 3-4; Dkt. #52, Exh. E; see also Dkt. #52, Exh B, at 12-13, Exh. F).

Third, plaintiff complains that defendant has not only redacted out the names and identifying information of all previous sex abuse victims who settled their claims against defendant, as agreed to before Judge Garfinkel at the November 12, 2015 hearing, but in fifteen of the deposition transcripts, including that of Simonds, also redacted the names and

identifying information of approximately fifty other children who were not victimized, never filed or threatened suit, never entered into a confidentiality agreement with defendant, and are not covered by Judge Garfinkel's order.  (Dkt. #51, at 5-7; Dkt. #52, Exh. D; Exh. B, at 6-9, 15).  And fourth, on February 19, 2016, defendant served a subpoena for a second deposition upon one of the plaintiffs who was deposed before, but whose case settled; the deposition was held on May 25, 2016 in Los Angeles.  (Dkt. #51, at 7-12; Dkt. #52, Exh. I). During the deposition, the deponent was asked a question he could not answer without violating the confidentiality agreement, and defendant cross-examined the deponent using his previous deposition testimony.  (Dkt. #51, at 7-12; Dkt. #52, Exh. I, at 6, 7, 15-17, 22-25, 30-33).  Plaintiff contends that "it is unduly prejudicial for . . . defendant's lawyers to have the possession and use of unredacted transcripts, while tying the hands of plaintiff['s] counsel with redacted ones[,]" and "it was profoundly improper for defense counsel to depose a settling plaintiff without first releasing him from [defendant's] mandatory confidentiality agreement."  (Dkt. #51, at 11).

Thus, plaintiff asks that both motions be denied (Dkt. #51, at 13-16), defendant should be precluded from using the former plaintiff's May 25, 2016 deposition testimony for any purpose (id. at 16), defendant should be compelled to re-produce all deposition transcripts without any redactions (id. at 16-17), and defendant should be compelled to perform a thorough search for the missing documents "from all sources, including court reporters, court files, counsel for co-defendants, school archives, defense law firm archives, and every other location where the documents may be found." (Id. at 17-18; Dkt. #52, Exhs. J-K).

In its reply brief, defendant argues that plaintiff has incorrectly interpreted the Rules

of Professional Conduct (Dkt. #54, at 2-3), that defendant has made "extensive production[,]" including deposition transcripts of former Trustees, employees and students, all in accordance with Judge Garfinkel's order in <u>Brownville</u> (<u>id.</u> at 3-4), that plaintiff's counsel had suggested, and thus agreed to, production of transcripts in defendant's possession with the names of prior plaintiffs and/or potential plaintiffs redacted in order to protect their privacy, and that such redaction should apply to all transcripts, including those in Attorney Grimes' possession (<u>id.</u> at 4-6), and that defendant has not engaged in any discovery misconduct and has no duty to seek documents from third parties, such as courts, court reporters, counsel for co-defendants, and defense law firm archives. (<u>Id.</u> at 6-7).   With respect to defendant's deposition of one of the unnamed plaintiffs, defendant asserts that such deposition was not improper in that the deponent had been identified during plaintiff's deposition, taken on December 16, 2015, as plaintiff's former roommate who had witnessed several alleged acts of sexual abuse, and according to defense counsel, this unnamed plaintiff had been released from his confidentiality order with respect to the questions posed at his recent deposition, and defense counsel asked only one question based upon the deponent's prior deposition testimony and there was one objection about the witness's independent recollection.  (<u>Id.</u> at 7-9).

<u>A.  PRIOR SETTLEMENT AND CONFIDENTIALITY AGREEMENTS</u>

The sample Settlement, Confidentiality, and General Release Agreement presented to the Court, negotiated between the settling plaintiffs and defendant, provided that each plaintiff agreed "that, except . . . if required by law, he will not provide or disclose any discovery materials from the Lawsuit, or any information obtained during any investigation conducted by him or on his behalf (either before or after suit was commenced) to any person

or entity." (Dkt. #52, Exh. A, ¶ 9). The paragraph continues that plaintiff's attorneys are also bound by "the same restrictions . . . , and [plaintiff] further agrees that such instruction cannot subsequently be revoked by him." (Id.).[4]

Contrary to plaintiff's arguments, last year, a federal court held that Rule 3.4(f) of the Missouri Rules of Professional Conduct, which bars a lawyer from "request[ing] a person other than a client to refrain from voluntarily giving relevant information to another party . . .[,]" does not apply to confidentiality agreements that are negotiated, and executed, as part of a settlement agreement. See, e.g., Timber Point Props. III, LLC v. Bank of Am., N.A., No. 13-3449-CV-S-DGK, 2015 WL 4426223, at *3-4 (W.D. Mo. July 20, 2015):

> [The paragraph at issue] does not violate Rule 3.4(f). No "lawyer" is "request[ing]" any party to refrain from divulging information here. The parties themselves negotiated and agreed to a mutual confidentiality provision, as reflected by the parties' signatures of the Memorandum of Settlement. The attorneys presumably counseled the parties in making this decision, but such was not unlawful; Rule 3.4(f) proscribes only requests to person "other than a client."

Id. at *3.

## B. AGREEMENT REACHED BEFORE AND ORDERED BY JUDGE GARFINKEL

As both parties acknowledge, many of the issues raised in these two motions already were addressed, extensively, in an oral argument before Judge Garfinkel on November 12, 2015 in the Brownville matter, which lasted nearly one hour. (Brownville, Dkts. ##99, 105, at 3, 37; see also Dkt. #52, Exh. B). When Judge Garfinkel inquired whether either counsel had communicated with the attorneys who previously represented the former plaintiffs in the 1990s lawsuits, defense counsel expressed that the two prior attorneys had been contacted, and both indicated that the former plaintiffs "vehemently do not want to be contacted." (Id.

---

[4]Paragraphs 9a and 9b contain exemptions not relevant here.

at 5-6).  According to defense counsel, one of the two attorneys represented that his clients do not "want anyone to know what they said[,]" particularly because some of the statements, including informal "depositions" with court reporters, were given to defense counsel "pre-suit, . . . with the understanding that this was for [defense counsel] to analyze the case, for [him] to evaluate the case, and if possible, to settle the case.  That was done.  A confidentiality agreement was entered into.  And his client[s do not] want to hear from anyone."  (Id. at 6-7).   The other attorney responded that he would not "even dare to go back and talk to [his] client[s] about this[,]" because they would be "so angry" and "furious" if their names, depositions, and information were to be released.  (Id. at 7-8).   One of the attorneys "made it very clear to [defense counsel] that when [defense counsel] settle[s] one of his cases, that's the end of it.  He wants . . . the transcripts destroyed, returned to him, or just never see the light of day again, because he feels that's what his clients are expecting of him."  (Id. at 15).

    After discussing the impossibility of returning to state court for permission to amend court orders that had been issued in the mid-1990s by one state court judge who is no longer on the bench and one who is deceased  (id. at 8-12), defense counsel acknowledged that "a lot of stuff has passed away – has gone[,]" but "some," perhaps five or six, deposition transcripts were still available. (Id. at 12-13).   Judge Garfinkel then inquired of plaintiff's counsel as to his thoughts regarding "the best way . . . [to] handle these deposition transcripts to give [plaintiff's counsel] the maximum amount of information without intruding upon the rights or at least, at a minimum, the legitimate interests of [the prior settling plaintiffs] who aren't a part of this litigation?"  (Id. at 18).      Plaintiff's counsel then responded, eloquently:

I think that's really the question. . . . I don't have any intention of publicizing anybody's names.

. . .

And I certainly respect the confidentiality and privacy of victims.  And if it's their choice not to want to talk to me, or to have their names in any filing or known to people outside of that litigation, I understand that, and I don't have any intention to breach it.

I don't think that's required here, though, because there's multiple ways that the deposition transcripts can be produced by the defendant I think consistent with those interests, and all subject to a protective order in this case, which would prevent any use beyond the parameters of this litigation, and then could have a provision that would involve their destruction or returning them to the defendant at the end of the case.

I think if the transcripts are redacted, as they have been so far, so the defendants have produced to me in this litigation thus far about a half dozen transcripts, and all of those, I think contain some redactions, and they're redactions of victims' names.  And so I cannot tell from those transcripts who the victims are, although I do get the information that I need, which is information about the abusers and the conduct of the school in response to the abuser or in advance of the abuser being found out.

So the information I want is really not victim-specific.  The information I want is what the school did and what it knew and when it knew it and those kinds of things.

So some of these are victims' depositions. . . . [T]he one I'm most interested in seeing . . . is Christopher Simonds' deposition. . . .

He's the one I really want to see.

. . .

Now, if he mentions in his transcript, or if there is a question that mentions in that transcript, one of the victims who filed suit, and there's a confidentiality agreement in that case, I have no trouble at all with that name being redacted.

. . .

And if there's identifying information: a name, address, a birthday, something like that, having that redacted, I have no objection to that either.

9

. . .

But that information is central to this case.

. . .

It's central to the liability of the school and to my allegations that I need to prove.  And so there may or may not be a confidentiality agreement that protects the victims' identities, but that would not prevent the disclosure of Mr. Simonds' deposition, for example.

. . .

So I think to back up to Your Honor's question, I think the way to do it is, allow the defendants to redact the names.  I know the names of many of the victims already. . .

. . .

So it's incumbent upon me, if I want to find out more, to locate their lawyers – and I have spoken to some of them – and to ask whether there's any objection.  And obviously if there's an objection, I won't do anything.  But I don't need the deposition transcripts to identify the victims.

. . .

The victim's identity is out there already, and everybody knows who they are.  But I think that everybody's interests can be protected if the names are redacted and there's a protective order in this case that has very strict provisions about with whom I can share the transcripts and what use I can ma[ke] of them.

(Id. at 18-21).  At Judge Garfinkel's suggestion, counsel agreed to identify the victims as

John Doe #1, John Doe #2, etc., to avoid confusion regarding the "multiple alleged victims,"

and estimated that there only "four or five victims' deposition transcripts" that plaintiff would

want to review, along with one from Simonds.  (Id. at 22-23).    Plaintiff's counsel then

repeated the agreement that for the Simonds deposition transcript, defense counsel would

redact the names of the victims, using John Doe numbers, and the same would be done with

respect to the victims' deposition transcripts.  (Id. at 26; see also id. at 29-33, 35-37).

10

Defense counsel  cautioned, once again, that they were uncertain of how many of the deposition transcripts they could locate, "given how old the litigation is and the number of people it has spanned[.]" (Id. at 27).  Later that day, Judge Garfinkel granted plaintiff's Motion to Compel in part, "pursuant to the procedure agreed upon by counsel at the hearing and subject to the protective order as discussed in court."  (Brownville, Dkt. #48).

By January 19, 2016, defendant had produced twenty-four volumes of transcripts from sixteen different deponents, from May 1994 through August 1997 (two are undated), and plaintiff had produced five volumes of transcripts from two deponents, from October 1995 through August 2013.  (Dkt. #52, Exh. D).

Given that virtually all of the deposition transcripts are at least twenty years old, it is not surprising at all that defense counsel has been unable to locate all the transcripts, particularly when there is such a modern push to "go paperless" and dispose of old files that linger in a law firm's archives.  Defense counsel raised that possibility, twice, during the oral argument before Judge Garfinkel.   Contrary to plaintiff's position, there was no misconduct on the part of defense counsel under these circumstances.[5]

### C.  CALIFORNIA DEPOSITION

As previously indicated, plaintiff requests that the Court preclude defendant from utilizing the deposition of a plaintiff who has settled his case.  As discussed above, this plaintiff's deposition was taken on May 25, 2016 in Los Angeles, at which the deponent twice answered that he was uncertain how he was supposed to answer the questions because of the confidentiality agreement he had signed when he settled his lawsuit against defendant. (Dkt. #51, at 7-12, 16; Dkt. #52, Exhs. H-I).   And as previously indicated, defendant

---

[5]The redaction of the names of non-victims will be addressed in Section I.D. infra.

contends that taking this deposition was not improper.  (Dkt. #54, at 7-9).

This issue of preclusion is best addressed in a Motion <u>in Limine</u>, to be considered by Judge Arterton, as the case advances toward trial.

D.  ADDITIONAL DISCOVERY

Under the unusual circumstances presented in this case, and giving appropriate deference to the legitimate concern of non-parties who may not want to be contacted by counsel and hence be forced to relive understandably horrible experiences during their adolescence some twenty years ago (to which plaintiff's counsel himself expressed sympathy during the November 12, 2015 oral argument before Judge Garfinkel in <u>Brownville</u>), the most equitable manner in which to proceed is as follows:

(1) **On or before August 26, 2016**, defendant shall conduct a thorough search of its own archives, and defense counsel shall conduct a thorough search of his law firm's archives, to determine if there are any additional deposition transcripts available which have not already been produced to plaintiff's counsel, including but not limited to Volume II of John Doe 1, Volume II of John Doe 3, of Headmaster Rouse and Teacher Nemiroff, and of John Does 6-55.  Similarly, **on or before August 26, 2016**, defense counsel shall confer with Attorney Grimes and all other attorneys who previously represented clients in similar claims against defendant,[6] to determine if such attorneys still have within their possession any additional deposition transcripts not previously produced to plaintiff, including but not limited to Volume II of John Doe 1, Volume II of John Doe 3, of Headmaster Rouse and Teacher Nemiroff, and of John Does 6-55;

(2) To the extent any additional deposition transcripts are located, **on or before**

_____

[6]As indicated in Dkt. #52, Exh. I and in Dkts. ##99 & 105, at 15, at least one of the plaintiffs who has settled was represented by Attorney Kenny.

**September 23, 2016**, defense counsel shall provide copies to plaintiff's counsel, in which he redacts the names of any alleged victims, to the extent required by, and consistent with, all the provisions agreed upon by counsel and ordered by Judge Garfinkel in <u>Brownville</u>;

(3) **On or before September 30, 2016**, defense counsel shall file an affidavit which outlines the efforts he took with respect to ¶¶ 1-2 <u>supra</u>;

(4) Regarding the fifteen deposition transcripts (including that of Simonds) where defendant apparently redacted the names and identifying information of fifty other students who were not victims, **on or before October 28, 2016**, defendant shall provide unredacted pages of such transcripts, in which the non-victim students are identified, <u>unless defense counsel has knowledge that any of them, were in fact, victims, or unless a non-victim has revealed that he or she will suffer psychological difficulties from being identified in this litigation</u>;[7]

(5) If, after review of all transcripts, plaintiff can articulate a <u>compelling</u> reason for defendant to identify the names of a limited and discrete number of settling plaintiffs-victims, the Magistrate Judge will reconsider in the future whether unredacted portions of the deposition transcripts can be produced;[8] and

(6) In light of the additional discovery that has been ordered in this Ruling, counsel shall submit to this Magistrate Judge a proposed Scheduling Order, which extends the discovery deadline beyond August 1, 2016.  (<u>See</u> Dkts. ##43-44).

---

[7]If need be, this Magistrate Judge is willing to perform an <u>in camera</u> review of limited portions of these depositions, as needed.

[8]<u>See</u> note 7 <u>supra</u>.

## II. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Protective Order (Dkt. #46) and the non-parties' Motion to Quash and for Protective Order (Dkt. #49) are <u>granted in large part to the extent set forth in Section I.D. supra</u>.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 20th day of July, 2016.


<u>/s/ Joan G. Margolis, USMJ</u>
Joan Glazer Margolis
U.S. Magistrate Judge

14