IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------X
                                         :
PETER BUCK                               :
                                         :
                                         :               15 CV 123 (JBA)
v.                                       :
                                         :
                                         :
INDIAN MOUNTAIN SCHOOL                   :               JANUARY 31, 2017
                                         :
-------------------------------------------------------X
```

RULING ON PLAINTIFF'S MOTION TO COMPEL DOCUMENTS WITHHELD BY
DEFENDANT ON CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT
PROTECTION (Dkt #98)

Familiarity with this litigation, and with this Magistrate Judge's previous discovery

rulings, is presumed.  (See, e.g., Dkts. ##56, 69).  On January 9, 2017, plaintiff filed the

pending Motion to Compel Production of Documents Withheld by Defendant on Claims of

Attorney-Client Privilege and Work-Product Protection (Dkt. #98),[1] which was referred to this

Magistrate Judge three days later.  (Dkt. #101).  On January 17, 2017, this Magistrate Judge

held a telephonic discovery conference regarding the pending motion (Dkt. #104), during

which defendant Indian Mountain School ["IMS"] and non-party Shipman & Goodwin, the law

firm engaged to investigate the underlying claims of abuse, were ordered to file their briefs

in opposition by January 24, 2017, and to produce the disputed documents for this Court's

in camera review, if such review is necessary after briefing is complete.  Consistent with this

Court's order, on January 24, 2017, defendant filed its brief in opposition, with exhibits in

---

[1]Attached to plaintiff's brief is an affidavit from counsel with the following exhibits: copy of
the Indian Mountain School ["IMS"] Shipman & Goodwin LLP Privilege Log, dated November 23,
2016 (Exh. A); copy of the IMS Supplemental Privilege Log, dated November 7, 2016 (Exh. B); and
copy of a letter entitled IMS Launches Investigation into Allegations from the Past, authored by the
IMS Head of School and the President of the Board of Trustees, undated (Exh. C).

support (Dkt. #124),[2] and Shipman & Goodwin filed its brief in opposition, with exhibits in support. (Dkt. #127).[3]  Both parties also provided Chambers with copies of the withheld documents. Currently, the trial is scheduled to commence on  February 13, 2017 and proceed through February 24, 2017.  (Dkt. #103).

    For the reasons stated below, plaintiff's Motion to Compel (Dkt. #98) is <u>denied</u>.

## I. DISCUSSION

### A. BACKGROUND

    Beginning in 1993, defendant was sued by former students who alleged that they were sexually abused while attending the school. (Dkt. #124, at 2). Attorney Altermatt has represented defendant in these lawsuits, and represented defendant in this case until July 26, 2016.  (<u>Id.</u>; <u>see</u> Dkt. #60).  During the course of his representation of defendant, Attorney Altermatt conducted discovery, including depositions of plaintiffs and former employees and Trustees; each of the earlier cases settled prior to trial.  (<u>Id.</u>).  In addition to hiring Attorney Altermatt to defend the school, in 2014 the school retained attorneys Morgan Ruekert and James Bergenn of Shipman & Goodwin to "conduct a complete investigation and to report back to the Board regarding what happened, and how best to respect and support any alumni who may have been harmed." (Dkt. #98, at 4 & Exh. C; <u>see also</u> Dkt. #127, Exh. A).  Defendant "invite[d] any alumni or other past or present members of the community with any relevant information to contact the Head of School . . . . or

---

    [2]Attached to defendant's brief in opposition is a letter from plaintiff's counsel to IMS' alumni, dated January 5, 2017 (Exh. A); affidavit of defense counsel, sworn to on January 23, 2017 (Exh. B); and a copy of case law. (Exh. C).

    [3]Attached to this brief in opposition is another copy of the letter from the defendant to its alumni, this time dated November 5, 2014 (Exh. A), and another copy of Shipman & Goodwin's thirteen page Privilege Log, dated November 23, 2016 (Exh. B).

Shipman & Goodwin . . . ." (Dkt. #98, Exh. C; Dkt. #127, Exh. A).

On January 5, 2017, plaintiff's counsel mailed a letter to "all IMS  alumni who attended the school during the period of 1973-1987 to request that anyone with information about sexual abuse occurring at the school during that time to contact [him]." (Dkt. #124, Exh. A).  Four days later, plaintiff filed this Motion to Compel, seeking the notes and correspondence that memorialized the resulting communications between Shipman & Goodwin and IMS' litigation counsel.  According to plaintiff, defendant has improperly withheld two categories of documents: (1) written statements by IMS alumni solicited in the course of an "investigation" conducted by Shipman & Goodwin, the school's "independent counsel", and (2) non-privileged facts contained in communications and notes authored by the defendant and its counsel.  (Dkt. #98, at 2).[4]

Shipman & Goodwin contends that information that plaintiff seeks falls within three categories: (1) privileged attorney-client email communications from defendant IMS' Head of School to counsel, attaching emails and/or notes, and further commenting to counsel; (2) attorney work product notes by the Head of School and/or counsel of conversations/interviews with Alumni; and (3) work product email communications between Alumni and the Head of School and/or counsel in response to the general communication to Alumni. (Dkt. #127, at 3).  Similarly, defendant contends that the documents plaintiff seeks consist of protected work product, and fall into seven categories: (1) notes of conversations with individuals who were deposed (and whose depositions are already in plaintiff's possession); (2) notes of conversations with individuals who could have been deposed by

_____

[4]As referenced above, the documents are identified in two privilege logs, the "IMS Shipman & Goodwin LLP Privilege Log" and the "Indian Mountain School Supplemental Privilege Log."  (See Dkt. #98, Exhs. A-B; see also Dkt. #127, Exh. B).

plaintiff; (3) investigation containing publically available information; (4) handwritten notes containing case strategy information; (5) documents "where it is not even clear who the witness is"; (6) notes of preparation for a deposition; and (7) miscellaneous notes, including notes on legal research, a draft timeline, a draft chronology, and a summary of Trustee Minutes (which are all in plaintiff's possession). (Dkt. #124, at 3).

### B. MOTION TO COMPEL STANDARD, ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PRIVILEGE

"'The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance.'" Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012), quoting U.S. v. Mejia, 655 F.3d 126, 132 (2d Cir. ), cert. denied sub nom. Rodriguez v. U. S., ___ U.S. ___, 132 S. Ct. 533 (2011).   The work product doctrine protects the discovery of memoranda, correspondence, briefs, mental impressions and personal beliefs prepared in anticipation of litigation.  Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). Under Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure,

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney. . . ).  But, subject to Rule 26(b)(4), those materials may be discovered if:

> (1) they are otherwise discoverable under Rule 26(b)(1)[5]; and

---

[5]Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery of:

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the  issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be

(2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Additionally, pursuant to Rule 26(b)(3)(B), "[i]f the court orders discovery of those materials, it must protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representatives concerning the litigation."  The party invoking a privilege "bears the burden of establishing its applicability to the case at hand." In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2001 v. United States, 318 F.3d 379, 384 (2d Cir. 2003)(multiple citations omitted).

As this Magistrate Judge has discussed: "The purpose of the privilege is 'to prevent a party from taking advantage of his adversary's efforts to gather material for litigation, and to foster the adversary system by providing a safe harbor within which an attorney can analyze and prepare his client's case.'" Hildebrand v. Wal-Mart Stores, Inc., 194 F.R.D. 432, 434 (D. Conn. 2000), quoting U.S. v. Weissman, No. S1 CR 760(CSH), 1995 WL 244522, at *5 (S.D.N.Y. Apr. 26, 1995)(citations omitted).  "For 'fact' work product, that is work-product that does not contain legal opinions or conclusions, the party seeking discovery must meet the 'substantial burden' and 'undue hardship' tests outlined in Rule 26." FDIC v. Wachovia Ins. Svs., Inc., 241 F.R.D. 104, 106 (D. Conn. 2007)(citation omitted).  "Opinion work-product is given stronger protection and is discoverable only in rare circumstances where the party seeking discovery can show extraordinary justification."  Id. (citations omitted).

With the foregoing principles in mind, this Magistrate Judge will first address the

---

admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

seven categories of documents withheld by defendant, followed by the documents withheld by Shipman & Goodwin.

<u>1. DOCUMENTS SOUGHT FROM DEFENDANT IMS' COUNSEL</u>

As discussed above, plaintiff seeks notes of conversations with individuals who were deposed (and whose depositions are already in plaintiff's possession); notes of conversations with individuals who could have been deposed by plaintiff; and notes from conversations in which the witnesses are not identified. (Dkt. #124, at 3). "[M]emoranda based on oral statements of witnesses . . . would reveal the attorney's mental processes[, and] . . . [i]t is clear that this is the sort of material the draftsmen of [Rule 26(b)] had in mind as deserving special protection." <u>Upjohn v. United States</u>, 449 U.S. 383, 400 (1981). Moreover, "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements[,]" which is precisely at issue in these categories of documents, "is particularly disfavored because it tends to reveal the attorney's mental processes." <u>See id.</u> at 399; <u>see also Hildebrand</u>, 194 F.R.D. at 434, <u>citing In re Grand Jury Proceedings</u>, 473 F.2d 840, 848 (8th Cir. 1973)(the work product doctrine also protects discovery of oral statements of witnesses). Accordingly, Attorney Altermatt's notes of witness interviews, which include his mental impressions and thought processes, are protected work-product, and as such, have been appropriately withheld by defendant. (<u>See</u> Dkt. #124, at 6-7; Dkt. #98, Exh. A, Document Nos: 84-86, 97-98, 100-20, 123-33, 135-36, 140-41, 143-45, 148-58, 160-61, 163, 165-81,183-87, 189, 192-93, 202).[6]

---

[6]Three documents appear on defendant's privilege log (Dkt. #98, Exh. B), but are not included in its seven categories (Dkt. #124, at 3; Exh. B, ¶ 5). Although No. 202 was not specifically listed, it also falls within the same classification. With respect to Nos. 231-32, defendant represents that they have been disclosed to plaintiff's counsel, except for redaction of the name of the student who brought a claim against IMS. (Dkt. #124, at 1, n.1).

Defendant categorizes the remaining documents at issue as: records of "[i]nvestigation containing publicly available information"; "[h]andwritten notes containing case strategy information"; "[n]otes for preparation for a deposition"; and notes on legal research, a draft timeline, a draft chronology, and a summary of Trustee Minutes, which Minutes are in plaintiff's possession. (Dkt. #124, at 10). Defendant contends that these documents "do not contain any facts that are not equally available to [p]laintiff[,]" and plaintiff has not established that "he is entitled to Attorney Altermatt's case strategy information or deposition preparation notes." (Id.). In light of the broad description of the foregoing documents, this Magistrate Judge undertook a careful and thorough in camera review of these categories of documents. After such a review, this Magistrate Judge concludes that these documents (Document Nos. 78-83, 97-98, 190, 194, 196-97) are properly withheld as protected work product. The majority of these documents contain opinion work product which is entitled to a greater protection than fact work product, In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183-84 (2d Cir. 2007), cert. denied sub. nom Doe v. U.S., 663 U.S. 1094 (2008), and for the one document containing publicly available information and fact work product, plaintiff has failed to satisfy his burden that he has a substantial need for this material and is unable to obtain it from another source

---

Additionally, for the category of documents where it is not clear who the witness is, the fact remains that the witness is one of people identified in the lists naming alumni, employees and Trustees, which was provided to plaintiff by defendant. Plaintiff has not claimed that the information contained in these notes cannot be obtained by other means, and without undue hardship. In fact, plaintiff has demonstrated his ability to solicit information from "alumni who attended the school during the period of 1973-1987[.]" (See Dkt. #124, Exh. A). Defendant represents that on August 10, 2015, it provided plaintiff's counsel with a list of all former Trustees, students and employees, with last known address and telephone numbers, and yearbooks. (Dkt. #124, at 2, 8, & 9, n.5).

Despite the conclusion reached here, the Magistrate Judge nonetheless conducted an in camera review of all of these documents, which reinforces the conclusion that these documents are not discoverable.

without undue hardship.

### 2. DOCUMENTS SOUGHT FROM SHIPMAN & GOODWIN

"In the context of the attorney-client privilege, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. Obtaining or providing legal advice must be the predominant purpose of a privileged communication." Koumoulis v. Indep. Fin. Mktg. Group, Inc., LP, 295 F.R.D. 28, 37 (E.D.N.Y. 2013)(internal quotations omitted)(compiling cases), Magistrate Judge's ruling adopted, 29 F. Supp. 3d 142 (E.D.N.Y. 2014). "Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." OneBeacon Ins. Co. v. Forman Int'l Ltd., No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *5 (S.D.N.Y. Dec, 15, 2006)(citation omitted).  However, "factual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege." Sandra T.E. v. South Berwyn Sch. Dist. 100, 600 F.3d 612, 619 (7th Cir. 2010)(emphasis in original), citing Upjohn, 449 U.S. at 401. Thus, the court must examine the role of the Shipman & Goodwin attorneys in this case, considering the duties they performed, and must determine whether they were providing legal advice or were serving as independent investigators.

Plaintiff, relying on the strikingly similar facts in Zimmerman v. Poly Prep Country Day Sch., No. 09 CV 4586(FB), 2011 WL 1429221 (E.D.N.Y. Apr. 13, 2011), urges this Court to conclude that the documents withheld by Shipman & Goodwin are not privileged. The plaintiffs in the Zimmerman case sued defendants for their response, or the lack thereof, to allegations that the school's highly regarded football coach and physical education instructor had sexually abused students over the course of several decades, starting in 1996.  2011 WL

1429221, at *1-9. Despite several complaints in the 1960's, 1970's, and 1980's, the defendant school did not deem any of them credible until one in 1991, at which time the football coach was forced to retire (but with an alumni event held in his honor).[7] Id.  It was not until 2002 that the school began a formal investigation into all these allegations, upon the receipt of a demand letter from an attorney representing a graduate who claimed that he had been sexually abused by this coach.  Id.  At the time, the defendant school consulted with its outside counsel, and also hired a solo practitioner, Peter T. Sheridan, Esq. "to conduct what [defendants] claim[ed] was a privileged and confidential investigation regarding [the coach's] alleged misconduct," which investigation was "to be performed in collaboration with [the school's] outside counsel."  Id. at *9.  In late 2002, the defendant school also sent a mass mailing to its alumni, in which it advised that the school's directors were conducting an "ongoing" investigation into the sexual abuse allegations.  Id. at *28, n.63.  Attorney Sheridan interviewed faculty and staff, including former Headmasters and Assistant Headmasters, Athletic Directors, and other coaches; he concluded that there was no firsthand or secondhand knowledge of any alleged sexual abuse at the school, other than the accusations made in 1991 and one other; his notes from his investigation subsequently were destroyed.  Id. at *9.  The plaintiffs alleged that Attorney Sheridan had failed to interview key individuals, including some other members of the Athletic Department as well as any of the complaining alumni.  Id.  The destruction of Attorney Sheridan's notes gave rise to plaintiffs' motion for spoliation.  Id. at *1, 10-12.  Plaintiffs further alleged that the numerous outside counsel whom the defendants retained to defend them in the newly filed lawsuits against them had, at  some point, been given access to Attorney Sheridan's

---

[7]He passed away seven years later, at which time a memorial fund was created in his memory.  Id. at *7.

investigative notes, but failed to put a litigation hold on defendants' documents, including those generated by Attorney Sheridan.  Id. at *14-21.

Defendants in Zimmerman argued, inter alia, that plaintiffs had no right to assert spoliation of attorney notes because such notes were "quite limited" and included "only general themes and personal shorthand[,]" and were further  protected from disclosure under the attorney-client privilege and work product doctrine.   Id. at *26-27.   The defendants in Zimmerman referred to Attorney Sheridan's notes as "'fact-finding' notes," and his invoices described his tasks as "Fact Gathering[.]" Id. at *28 & n.62.  According to Attorney Sheridan, the stated purpose of his retention by defendant school "was to investigate and learn 'the extent, if any, to which members of the school's faculty or administration knew of sexual misconduct or sexual abuse by [the coach],' not to advise [the school] on how to proceed.'" Id. at *28.   However, the plaintiffs argued that the documentation that still existed reflected that Attorney Sheridan did not reveal to the people that he interviewed that he was an attorney, and he did not indicate that he was there for the purpose of trying to defend the school in future litigation.  Id.  U.S. Magistrate Judge Cheryl Pollak found that defendants had not met their burden with respect to the applicability of either the attorney-client or work product privileges, particularly when "the defendants' spoliation has deprived plaintiffs of the opportunity to have this Court conduct an in camera review to determine the existence of said privilege and to have the documents produced in partially redacted form[]"; accordingly, sanctions were imposed. Id.  at *29-35, 39.[8]

---

[8]Similarly, in Rivera v. Thurston Foods, Inc., No. 11 CV 893 (JBA), 2012 WL 603297, at *1, 3 (D. Conn. Feb, 24, 2012), relying upon Zimmerman, this Magistrate Judge found "under the unusual circumstances of [that] case," a "Statement of Facts" prepared by a plaintiff at his attorney's request, that were lifted in "nearly identical" fashion into the plaintiff's complaint, was not governed by either the attorney-client privilege or the work-product protection, although all the other documents at issue were so protected. Rivera, 2012 WL 603297, at *1, 3.

This case, however, differs from <u>Zimmerman</u> in at least four important respects. In this case, Shipman & Goodwin was retained in October 2014 "by a Special Committee of the Board of Trustees of IMS to conduct a comprehensive investigation of allegations of sexual molestation against the school[.]" (Dkt. #127, at 1).   According to Shipman & Goodwin, the firm was also retained to "advise IMS about how to respond to the ongoing and anticipated litigation." (<u>Id.</u>).   In the letter sent to the "IMS Community" on November 5, 2014, the Head of School and Board of Trustees of defendant described Shipman & Goodwin's role as follows: "[t]he Board of Trustees has retained independent legal counsel to conduct a complete investigation and to report back to the Board regarding what happened, and how best to respect and support any alumni who may have been harmed. The investigation will be led by . . . the law firm Shipman & Goodwin." (Dkt. #127, Exh. A). The letter went on to explain the attorneys' experience, and defendant's reliance on their judgment – "Mr. Ruekert and Mr. Bergenn have extensive experience handling this type of investigation, and we have confidence in their integrity, sensitivity, and judgment." (<u>Id.</u>). Defendant encouraged the IMS "community" to contact the Head of School or Shipman & Goodwin so that they may "listen to any information you are willing to share, and to offer any other direct support you may need." (<u>Id.</u>).[9]

---

[9]As Shipman & Goodwin explained in its brief:

> All individuals who were interviewed contacted counsel in response to the general communication sent to Alumni.  No individuals were contacted unsolicited. During interviews, counsel identified himself as a lawyer, that he was not IMS'[] litigation counsel, and that he was going to report his findings to the [IMS] Board, but that he did not intend to share any of the names of the victims, only names of persons who could be substantiated as having committed misconduct.  During the course of the investigation, Shipman did not share any of its findings or information it obtained with insurance defense counsel.

(Dkt. #127, at 2).

First, Attorney Sheridan's role was limited merely to fact-finding, without any indication that he was going to make any recommendations, legal or otherwise, to the defendant school, unlike Shipman & Goodwin, whose retention included advising defendant IMS "how best to respect and support any alumni who may have been harmed[,]" and which law firm specifically was retained in connection with ongoing and anticipated litigation. Second, Attorney Sheridan apparently did not reveal to the people that he interviewed that he was an attorney, nor he did indicate that he was there for the purpose of trying to defend the school in future litigation, whereas the alumni notice in this case clearly spells out that Ruekert and Bergenn are attorneys. At the time the letter was sent to the IMS community, defendant had been defending lawsuit for twenty-one years, from 1993 through 2014, so that litigation clearly was anticipated. Third, there apparently was no expectation of privacy or confidentiality in the fact-gathering interviews conducted by Attorney Sheridan; while the words "privacy" or "confidentiality" do not appear in the November 5, 2014 mass mailing, the insertion of the words "integrity" and "sensitivity" in describing Attorneys Ruekert and Bergenn's experience to this field give the same impression that the communications to them will not be revealed.[10]   And lastly, the people interviewed by Attorney Sheridan were all prominent representatives of the defendant school, individuals who clearly were going to be deposed in the anticipated litigation in Zimmerman and whose alleged failure to respond was apparent, or soon would be, and whose credibility was going to loom large at trial, whereas the individuals targeted here for interview were other potential victims, or witnesses, that is, people whose identities had not yet  been revealed in the anticipated litigation.

_____

[10]See note 9 supra.

As a result, this case bears greater similarity to <u>Sandra T.E.</u>, in which the plaintiffs had filed a lawsuit against a public school district and an elementary school principal, alleging that they had failed to respond when they learned of accusations that a music teacher had been molesting students over a period of seven years.  600 F.3d at 615-16.   Within a few weeks of the filing of that lawsuit, and the music teacher's arrest for those assaults (to which he eventually confessed and was sentenced to twenty years in prison), defendant hired the prominent law firm of Sidley Austin LLP, "spearheaded" by a former U.S. Attorney, "to investigate the response of the school administration to allegations of sexual abuse of students" and to "provide legal services in connection with" the investigation.   <u>Id.</u>   The defendants also sent two letters to parents announcing their retention of the law firm and explaining the law firm's role in the investigation.   <u>Id.</u> at 616.   Attorneys from the law firm interviewed current and former principals, current and former school employees, social workers, school board members, administrative employees, and "a handful of" third-party witnesses unaffiliated with defendant.   <u>Id.</u>   The lawyers did not record those interviews but rather took handwritten notes that were later drafted into memoranda summarizing the interviews; the law firm delivered its findings and legal advice to the school board in an oral report and written executive summary.   <u>Id.</u>   The lawyers were not involved in defending the defendants in the lawsuit.   <u>Id.</u> at 615, 616.   The plaintiffs sought discovery regarding the contents of the law firm's investigatory file, as to which defendants and Sidley Austin objected on the basis of attorney-client privilege and work-product doctrine.   <u>Id.</u> at 615.   The district judge denied a motion to quash, having concluded that Sidley Austin "had been hired to provide investigative services, not legal services."   <u>Id.</u>   Following this ruling, the law firm turned over "more than a thousand pages of documents. . . . [b]ut the firm withheld its notes and memoranda from witness interviews and other internal legal memoranda prepared

in connection with the investigation[,]" again asserting the attorney-client privilege and the work-product doctrine.  Id.  at 616-17.  After additional motion practice, the district court twice ordered the law firm to produce the notes and internal memoranda, again finding that the defendants had hired the law firm "as . . . investigator[s], not as . . . attorney[s]."  Id. at 617.

The Seventh Circuit reversed the district court's ruling on appeal.  Id. at 618-23.  The Seventh Circuit found that the district judge's failure to "actually consider[]" the language of Sidley Austin's retention letter was a "mistake," and the language in the retention letter brought "this case squarely within the Supreme Court's decision in Upjohn, which explained that factual investigations by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege."  Id. at 619 (emphasis in original).  The retention letter in Sandra T.E. "spell[ed] out that [the defendants] retained Sidley [Austin] to provide legal services in connection with developing [the defendants'] response to [the music teacher's] sexual abuse of his students[.]" Id. at 620.  The Seventh Circuit found that the law firm's "investigation of the factual circumstances surrounding the abuse was an integral part of the package of legal services for which it was hired and a necessary prerequisite to the provision of legal advice about how the [defendants] should respond."  Id.  While recognizing that a defendant cannot utilize an engagement letter to "reclassify nonprivileged communications as 'legal services' in order to invoke the attorney-client privilege," id. (citation omitted), the Seventh Circuit found that the Sidley Austin attorneys conducted themselves "in their capacity as attorneys[.]" Id.  Specifically, Sidley Austin counsel conducted confidential interviews with the defendants' employees, provided them with the "so-called Upjohn warnings" that they were representing the board itself and not the employees, and that the school board would decide whether the conversations would remain confidential, and

ensured confidentiality by prohibiting third parties from attending the interviews. Id.  With respect to the work-product doctrine, the Seventh Circuit similarly rejected the plaintiffs' argument that the Sidley Austin "investigation was only designed to quell public outrage and prevent similar occurrences in the future," finding instead that the "chronology of events confirms that Sidley [Austin] was hired to conduct [the defendants'] investigation not merely in anticipation of likely litigation but in response to the actual filing of this lawsuit."  Id. at 622 (emphasis in original).  The Seventh Circuit further found that the defendants' "other motivations" in hiring the law firm, i.e., the public relations aspect of it, "[did] not remove the investigation from the protection of the work-product doctrine." Id.  Lastly, with regard to the "substantial need" and "undue hardship" considerations, the plaintiffs in Sandra T.E. acknowledged that the information sought "would really only bolster already existing impeachment evidence contained in their own investigation or in the police record." Id. at 622-23.

There are multiple parallels between this lawsuit and Sandra T.E.  The communications in the instant case between the Head of School and the Shipman & Goodwin attorneys were confidential, as were the communications with the alumna and alumnus who responded to defendant's letter.  Second, in both cases, the law firms were retained specifically to develop the defendants' response to the claims of sexual abuse.  Third, the attorneys were retained in the midst of ongoing litigation.  At the time the letter was sent to the IMS Community, defendant was aware, and "deeply concerned[,] with allegations of sexual abuse brought forth by alumni[,]" (Dkt. #127, at Exh. A),[11] and as defendant notes

---

[11]In addition to providing the Court with the letter sent to the "IMS Community[,]" Shipman & Goodwin provided the Court and plaintiff with a detailed privilege log, and provided copies of the challenged documents to this Magistrate Judge for her in camera review, should she conclude that one is necessary. See Rao v. Bd. of Trustees of Univ. of Ill., No. 14 CV 66, 2016 WL

in its brief in opposition, IMS has been defending these suits since 1993. (Dkt. #124, at 2). Additionally, the fact that defendant had retained different litigation counsel "is not dispositive[,]" and "does not remove the investigation from the protection of the work product doctrine." Sandra T.E., 600 F.3d at 622.

Thus, while in limited situations documents protected as attorney work product are discoverable if the party can establish a "substantial need" for the documents and cannot obtain them without "undue hardship[,]" FED. R. CIV. P. 26(b)(3)(A)(iii), as discussed above, the disclosure of witness interviews and documents related thereto, is "particularly disfavored[.]" Upjohn, 449 U.S. at 399.  Moreover, plaintiff, who has shown his ability to reach out to defendant's alumni (see Dkt. #124, Exh. A),[12] albeit on the eve of trial,[13] has not established a showing of substantial need.[14]

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel (Dkt. #98) is denied.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order

---

6124436, at *6-7 (N.D. Ill. Oct. 20, 2016)(ordering production of investigative file when defendants failed to produce affidavits, the engagement letter, a privilege log, or "even a general description of the documents they seek to protect").

Despite the conclusion reached here, the Magistrate Judge nonetheless has performed an in camera review of all of the documents, which again reinforces the conclusion that these documents are not discoverable.  See note 6 supra.

[12]See note 6 supra.

[13]Similarly, these requests are before the Court long after the close of discovery (see Dkt. #44), and within weeks of the start of trial.

[14]In light of the conclusion reached here, there is no need to address the other arguments made by Shipman & Goodwin in their brief.  (Dkt. #127, at 11-13).

of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, ___ Fed. App'x ___, 2016 WL 6787933 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).[15]

Dated at New Haven, Connecticut, this 31st day of January, 2017.


/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

[15]These documents shall remain in this Magistrate Judge's Chambers, unless instructed by Judge Arterton's Chambers to deliver the documents to them or to file them under seal.

If counsel are confident that a settlement conference before this Magistrate would be productive (as opposed to merely could be productive), they should contact Chambers immediately, insofar there are now two time slots that have become open prior to the trial date set in this case.